UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAVID CONRAD,

    Petitioner,

v.

WARDEN MERENDINO,

    Respondent.

Civil Action
No. 23-3781 (CPO)

OPINION

**O'HEARN, District Judge.**

Petitioner is a federal prisoner currently incarcerated at Federal Correctional Institution ("FCI") Marianna, in Marianna, Florida.[1] He is proceeding *pro se* with an Amended Petition for Writ of Habeas Corpus (hereinafter "Petition"), pursuant to 28 U.S.C. § 2241. (ECF No. 6.) For the reasons stated in this Opinion, the Court will dismiss the Petition for Petitioner's failure to exhaust his administrative remedies.

## I.    BACKGROUND

This case arises from a disciplinary hearing during Petitioner's incarceration at FCI Fairton, in Fairton, New Jersey. On May 13, 2023, Petitioner provided a urine sample for testing and acknowledged that it was his sample by signing a chain of custody form. (ECF No. 15-2, at 41.) On May 30, 2023, the outside laboratory informed prison staff that the sample tested positive for buprenorphine and norbuprenorphine. (*Id.* at 41, 47.) Staff reviewed Petitioner's medical records and determined that he was not prescribed with any medication that would cause his sample to test positive for those substances. (*Id.*)

---

[1] At the time of filing, Petitioner resided at FCI Fairton, in Fairton, New Jersey. (*See* ECF No. 1-2, at 1.)

Later that same day, the Bureau of Prisons ("BOP") issued an incident report and delivered it to Petitioner, charging him with drug use in violation of BOP Code 112.[2] (*Id*. at 43.) Staff advised Petitioner of his rights, and at the end of the investigation, the investigating officer referred the incident report to the Unit Discipline Committee ("UDC") for an initial hearing. (*Id*.)

On June 1, 2023, the UDC held a hearing where Petitioner stated, "I couldn't have passed if I wanted to. The buprenorphine is still in my system from the medication assisted treatment program. Now the norbuprenorphine is the medicine *I took on the compound to self-medicate*." (*Id*. at 42 (emphasis added) (cleaned up)). At the conclusion of the hearing, the UDC referred the incident report to a Discipline Hearing Officer ("DHO"). (*Id*.) Petitioner thereafter received a notice of discipline hearing, staff advised him of his rights, and he acknowledged those rights. (*Id*. at 49.) He requested to have Dr. Redondo serve as his staff representative and declined to request any witnesses. (*Id*. at 50.)

The DHO held a hearing on June 15, 2023, and Dr. Redondo appeared as Petitioner's staff representative. (*Id*. at 45.) Petitioner was again notified of his rights and declined to present documentary evidence or call any witnesses. (*Id*. at 46.) Petitioner testified that he "was not using drugs" and denied the charge. (*Id*. at 45.) The DHO considered Petitioner's testimony, the incident report, the urine sample chain of custody form, the lab reports showing that Petitioner tested positive for buprenorphine and norbuprenorphine, and a medical memorandum which showed that Petitioner was not prescribed medication that would cause those results. (*Id*. at 45–47.) Petitioner offered no evidence other than his denial to support his defense. (*Id*. at 47.)

---

[2] BOP Code 112 prohibits the "[u]se of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff." 28 C.F.R. § 541.3 (Table 1).

2

Ultimately, the DHO found Petitioner guilty of using drugs in violation of BOP Code 112 and issued the following sanctions: (1) revocation of 41 days of good conduct time; (2) 45 days of disciplinary segregation; and (3) the loss of 180 days of visiting privileges. (*Id*. at 47.) Petitioner received the final DHO report on July 11, 2023. (*Id*. at 48.)

As to his administrative remedies, Petitioner alleges that he appealed the DHO's decision on or about June 30, 2023, to the BOP's regional office, but never received an answer. (ECF No. 6, at 2–3.) Shortly afterwards, through the certified mail tracking number, he discovered that although his case manager had taken his appeal, it was never mailed to the regional office. (ECF No. 18, at 3.) Rather than take any other action, Petitioner filed his original § 2241 petition, approximately eleven days later, on July 10, 2023.[3] (*Compare* ECF No. 1, at 5, *with* ECF No. 15-2, at 48.) Thus, Petitioner tried to file his administrative appeal and filed his original petition in this Court, before receiving the final DHO report on July 11, 2023. (*Compare* ECF No. 1, at 5, *and* ECF No 6, at 2, *with* ECF No. 15-2, at 48.) According to the BOP's records, Petitioner never filed an administrative remedy regarding the June 15, 2023, DHO hearing but had filed several other unrelated grievances since then. (*See* ECF No. 15-2, 38–39.)

On July 10, 2023, Petitioner filed his original petition, (ECF No. 1), and in August of 2023, Petitioner filed the instant Petition, arguing that the charge and disciplinary proceedings against him violated his rights. (ECF No. 6, at 5–7.) Respondent filed an Answer opposing relief, (ECF No. 15), and Petitioner filed a Reply, (ECF No. 18). In terms of relief, Petitioner seeks the

---

[3] Under the prison mailbox rule, the Court will accept the date Petitioner signed his Petition as the filing date, (ECF No. 1, at 5), rather than the date the Court actually received his Petition. *See, e.g.*, *Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011) ("The federal 'prisoner mailbox rule' provides that a document is deemed filed on the date it is given to prison officials for mailing.").

restoration of his good conduct time, the expungement of the charge, and to "review previous false charges" against him. (ECF No. 1, at 11.)

## II.  STANDARD OF REVIEW

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998). If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

## III.  DISCUSSION

The Court must address the issue of exhaustion as it appears on the face of the Petition that Petitioner has failed to exhaust his administrative remedies. Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner may not ordinarily bring a § 2241 petition, challenging the execution of his sentence, until he has exhausted all available administrative remedies. *E.g.*, *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).

Courts require exhaustion for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761–62; *see also Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). Nevertheless, exhaustion is not required where it would not promote these goals, such as where exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm" *Lyons*, 840 F.2d at 205; *see also, e.g.*, *Gambino*, 134 F.3d at 171 (finding that exhaustion is not required where petitioner demonstrates futility).

To determine whether a prisoner has exhausted his administrative remedies, courts look to the agency's applicable grievance procedure and rules, in this case, the BOP. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Pursuant to the BOP's administrative remedy program, an inmate must generally attempt to informally resolve the issue by presenting it to staff through a BP-8 form. *See* 28 C.F.R. § 542.13. If that fails to informally resolve the issue, then the inmate may submit a BP-9 form to the warden. *See* 28 C.F.R. § 542.14. An inmate who is dissatisfied with the warden's response may appeal to the regional director with a BP-10, and an inmate who is dissatisfied with the regional director's decision may appeal to the general counsel in the central office, through a BP-11. *See* 28 C.F.R. § 542.15(a). An appeal to the general counsel is the final level of administrative appeal. *Id.* In cases that involve DHO appeals, like the present case, the administrative remedy process begins at the regional director level, and inmates are not required to file a BP-8 or BP-9. *See* 28 C.F.R. § 542.14(d)(2).

Here, Petitioner concedes that he has not exhausted his administrative remedies. (*See* ECF No. 6, at 2–3; ECF No. 18, at 3.) Although he does not possess a copy, he alleges that he appealed the DHO's decision by filing a BP-10 on or about June 30, 2023, but never received a response from the BOP's regional office. (ECF No. 6, at 2; ECF No. 18, at 3.) Petitioner admits that upon discovering that his BP-10 was never mailed—allegedly due to interference by unidentified staff—he filed this case on July 10, 2023. (ECF No. 18, at 3; ECF No. 1, at 5.) Petitioner argues that he was not required to exhaust because once he discovered that "staff had taken his [BP-10] and not sent it out," it was "futile and untimely" to continue with the administrative remedy process. (ECF No. 18, at 3.)

The Court disagrees. The DHO hearing took place on June 15, 2023, and while Petitioner may have received a preliminary decision,[4] Petitioner did not receive the final DHO report until July 11, 2023. (ECF No. 15-2, at 48.) Although the BOP's regulations, 28 C.F.R. §§ 542.14(a), (d)(2), do not specify precisely when the time to appeal a DHO decision begins, the BOP has interpreted that time as starting upon *receipt* of the DHO report. *See, e.g.*, *Philbrook v. Spaulding*, No. 15-0090, 2016 WL 3690096, at *4 n.4 (M.D. Pa. June 6, 2016) ("[T]he BOP has interpreted the regulations as providing a 20-day window from receipt of the DHO report."); *Lindsey v. Thomas*, No. 14-0039, 2015 WL 5514900, at *8 n.4 (M.D. Pa. Sept. 15, 2015) (same); *Pittman v. Thomas*, No. 13-1473, 2014 WL 7335041, at *8 (M.D. Pa. Dec. 19, 2014) ("[T]he Regional Director's response. . . advised . . . that the twenty-day time frame for appeal from a DHO report

---

[4] As Petitioner did not provide a copy of his BP-10, it is unclear if he attempted to appeal a preliminary version of the report or perhaps the DHO's oral decision. (*See* ECF No. 6, at 2–3; ECF No. 4-1, at 1–2; ECF No. 18, at 2.) After filing his Petition, in August of 2023, he filed a copy of *a* DHO report, but that copy is missing the final page, which would have indicated the date of delivery and whether Petitioner was advised of his time to appeal. (*Compare* ECF No. 4-1, at 1–2, *with* ECF No. 15-2, at 46–48.)

6

began upon its *receipt*.") (emphasis in original); *Smaragdas v. DeRosa*, No. 04-1626, 2006 WL 477029, at *2 (D.N.J. Feb. 27, 2006) (same); *see also Hrycuna v. Ormond*, No. 18-246, 2019 WL 1304250, at *4 n.2 (E.D. Va. Feb. 19, 2019) ("[A]ctual agency practice appears to use the receipt date as the relevant benchmark.").

Consequently, Petitioner's time to appeal began upon his receipt of the final DHO report on July 11, 2023, (*see* ECF No. 15-2, at 48), and his time to appeal had not yet commenced when he filed his original petition on July 10, 2023, (*see* ECF No. 1, at 5). As a result, when he discovered that staff had failed to mail his BP-10, at some point before July 10, 2023, it would not have been futile to resubmit his BP-10.

Petitioner speculates that someone "purpose[fully] tossed out" his BP-10, but even if true, it would not have been futile to try to resubmit his BP-10 as his time to appeal had not yet expired. (*See* ECF No. 18, at 4.) He does not allege, for example, that staff prevented him from resubmitting his BP-10. (*See generally* ECF Nos. 1, 3, 4, 6, 18.) He may have simply assumed that staff would interfere, based on this instance, but the BOP's records show that he has been able to file dozens of administrative remedy requests, including several that were filed after the June 15, 2023, DHO hearing. (*See* ECF No. 15-2, 8–39.)

In any event, assuming *arguendo* that Petitioner's time to appeal had expired, it would not have been futile to pursue the administrative remedy process. The BOP allows for extensions of time to appeal when inmates can show "a valid reason for delay," for "situation[s] which prevented the inmate from submitting the [appeal] within the established time frame." 28 C.F.R. § 542.14(b).

Here, Petitioner does not allege that he undertook any effort to seek an extension, or otherwise follow up, after discovering the failure to mail his BP-10. (*See* ECF No. 18, at 1–6; ECF No. 6, at 2–3, 7; ECF Nos. 3, 4.) He does not allege, for example, that he followed up with the

case manager who accepted his BP-10 or inquired about the mailing delay with any other staff member. (*See* ECF No. 18, at 3–4; ECF No. 3, at 1.) Instead, it appears that upon discovering the mailing issue, he immediately concluded that "further appeal via prison remedies was . . . futile," and "filed this § 2241 [case]." (ECF No. 18, at 3.) However, his case manager could very well have attempted to mail his BP-10 and substantiated an extension request based on that mailing delay. Accordingly, even if Petitioner's time to appeal had expired when he discovered the mailing issue, Petitioner has not shown that it would have been futile to seek an extension or otherwise pursue the administrative remedy process.

Further, under 28 C.F.R. § 542.18, if an inmate "does not receive a response within the [30 days] allotted" from the regional office, an "inmate may consider the absence of a response to be a denial at that level." Consequently, approximately 30 days after placing his BP-10 in the mail, Petitioner could have considered the regional office's failure to respond as a denial, which then permitted him to file a BP-11 with the central office. *Id*. Thus, the regional office's failure to respond did not prevent Petitioner from exhausting his administrative remedies and did not excuse the exhaustion requirement. *See id*.

Nor does Petitioner allege any other facts that would permit the Court to find that exhaustion would be futile, that requiring exhaustion would subject Petitioner to irreparable injury, or any other reason to excuse exhaustion. (*See generally* ECF No. 6; ECF No. 18.) Accordingly, the Court will not excuse Petitioner's failure to exhaust.

## IV. CONCLUSION

For the reasons above, the Court will not excuse Petitioner's failure to exhaust and will dismiss the Petition for his failure to exhaust his administrative remedies. This dismissal is without prejudice to the filing of a new petition pursuant to 28 U.S.C. § 2241, under a new docket number, after Petitioner has exhausted his administrative remedies. Additionally, the Court will deny Petitioner's motion to expedite, (ECF No. 21), as moot. An appropriate Order follows.

DATED: December 12, 2024

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**